J. D. McBRIAN v. JAMES M. NATION, as Auditor, etc.

No. 16,056. (97 Pac. 798.)

SYLLABUS BY THE COURT.

1. OFFICE AND OFFICERS—*Chaplain of State Penitentiary—Duties.* By the provisions of section 7046 of the General Statutes of 1901 the chaplain of the state penitentiary is required to devote his whole time to the performance of his official duties, and he can not perform other service and receive compensation therefor from the state in addition to his salary as chaplain.

2. ——— *Extra Services—Additional Compensation.* The warden and board of directors of the penitentiary employed the chaplain to superintend a prison school, agreeing to pay the sum of thirty dollars a month therefor in addition to his salary as chaplain. The service was rendered. The state auditor refused to allow a claim for such services. *Held,* that this court can not compel the allowance of such claim by a writ of mandamus.

Original proceeding in mandamus. Opinion filed October 10, 1908. Writ denied.

*J. D. McBrian, pro se.*

*Fred S. Jackson,* attorney-general, and *John S. Dawson,* assistant attorney-general, for defendant.

The opinion of the court was delivered by

GRAVES, J.: J. D. McBrian, the plaintiff, is chaplain of the state penitentiary. The defendant is auditor of the state. The warden and board of directors of the penitentiary employed the plaintiff to superintend a prison school for thirty dollars a month in addition to his salary as chaplain. Plaintiff performed these services from November 4, 1907, to March 18, 1908, and was paid therefor, except the sum of eighteen dollars. This last amount the state auditor refused to allow, and declined to issue a warrant upon the treasurer therefor. Thereupon the plaintiff commenced this action in this court, praying that a writ of mandamus be allowed to compel the auditor to perform such official act.

The case is submitted upon the pleadings and certain facts conceded to be true, from which it appears that the plaintiff, at the time the services in question were rendered, was the regular chaplain of the state penitentiary, holding such office under the provisions of law relating thereto and receiving the salary provided thereby. These statutes, so far as material to the question in controversy, are sections 7029 and 7046 of the General Statutes of 1901, which read:

"The officers of the penitentiary shall consist of one warden, who shall reside at the penitentiary, one clerk, one physician and surgeon, one chaplain, one deputy warden, and such keepers as the warden and directors shall deem to be requisite. No other person except convicts shall be boarded at the penitentiary.

"The chaplain shall have charge of the spiritual wants and condition of the convicts. He shall preach to the convicts at least once every Sabbath himself, unless prevented by sickness, in which case he shall furnish a regularly ordained preacher. He shall be the librarian of the penitentiary, and shall have charge of the books and the distribution and management thereof, and shall devote his whole time to the intellectual and moral improvement of the convicts."

By chapter 20 of the Laws of 1907 appropriations

were made for the maintenance of the state peniten-
tiary, and among the items in the schedule were the
following (§ 1) :

|  | 1908. | 1909. |
|---|---|---|
| "Chaplain | $1,000 | $1,000 |
| Prison school and library | 2,000 | 2,000" |

It does not appear that a school had been established
at the prison prior to this appropriation, and no pro-
visions were made directing how the sum appropriated
should be used. The warden and the board of directors
organized a night school and employed the chaplain to
superintend it, as before stated. The auditor declined
to allow the claim for the services rendered by the
chaplain as superintendent of the school, for the reason
that the law required his whole time to be devoted to
his duties as chaplain and his salary was fixed as full
compensation therefor. The words "shall devote his
whole time to the intellectual and moral improvement
of the convicts" (Gen. Stat. 1901, § 7046) are claimed
to justify this conclusion.

The chaplain insists that the services rendered by
him as superintendent of the school were not such as
were contemplated by the statute which created the
office of chaplain and prescribed the duties thereof;
that they were rendered after night, when his official
labors had ended for the day, and therefore no reason-
able objection could be offered to his being employed
and paid for such service, the same as a person not
otherwise employed by the state.

We think the language of the statute relied upon by
the auditor was used for a purpose which should be
fully recognized and strictly enforced. It seems clear
that by this language it was intended to secure the un-
divided care and attention of the chaplain in the per-
formance of his official duties. It is conceded by the
plaintiff that the service in controversy is independent
and outside of his duties as chaplain. It follows, there-
fore, that he might have been employed in performing
some part of his official work when engaged in this out-

side service. If he may be permitted to perform this extra service and receive additional compensation therefor, there will be no certain and adequate standard by which to determine when the performance of extra work is of sufficient magnitude to become a violation of the statute.

It seems that the full purpose of this statute can only be secured by construing the statute strictly and holding that the words "his whole time" mean "all" of his time. The state pays the chaplain $1000 for his services, and requires him to devote his whole time to the performance of his official duties. By this is not meant that he shall at all times be engaged in the performance of some work incident to his office, but that he shall not engage in any other employment. Otherwise he might be engaged for compensation in preparing sermons to be delivered elsewhere, or for publication; and he might engage in other literary work to such an extent as to impair materially his efficiency as chaplain. The present prison policy of the state is to reform the convicts as far as possible, and to that end it employs a chaplain, who agrees to give his whole time to their moral and intellectual development; and it is not unreasonable that he should do so. The case here presented is an extreme one. The services as superintendent of the night school are performed when the chaplain would probably not be engaged in any official duty. No material injury is suffered by the state. Moreover, the chaplain would seem to be an eminently proper person for a superintendent of the school, and his services are less expensive than if a specially qualified person were employed to perform them. Strictly speaking, however, the time so devoted by the chaplain belongs to the state and is paid for by his salary; and this is a sufficient reason why the state should not be called upon for further payment. We think the auditor was justified in his action.

The writ is denied.